UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| ROBERT G. STEWART,  )<br>                              )<br>    Plaintiff,              )<br>                              )<br> V.                           )<br>                              )<br> KILOLO KIJAKAZI,             )<br> Acting Commissioner of Social Security  )<br>                              )<br>    Defendant.             )  | No. 7:21-cv-00061-GFVT<br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

*** *** *** ***

Pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c), Plaintiff Robert Stewart seeks judicial review of the denial of his request for disability insurance benefits.  In support, Mr. Stewart alleges that the reviewing ALJ committed multiple errors in considering this matter.  The Court, having reviewed the record and for the reasons set forth herein, will **DENY** Mr. Stewart's Motion to be Heard [R. 18] and **GRANT** the Commissioner's Motion For Summary Judgment [R. 17.]

I

A

Plaintiff Robert Stewart initially filed an application for Title II disability insurance benefits in June 2015, where he alleged disability beginning May 28, 2014.  [Tr. at 89.]  In June 2018, an Administrative Law Judge found Mr. Stewart to not be disabled.  *Id.* at 89-97.  Mr. Stewart's request for review of this decision was denied in March 2019.  *Id.* at 12.  Mr. Stewart reapplied for DIB in September, where he once more claimed disability beginning May 28, 2014.  *Id.* at 215-21.  Mr. Stewart's second claim was initially denied in February 2020 and was denied again upon reconsideration the following March.  *Id.* at 11.  Mr. Stewart was then granted a

telephonic review hearing pursuant to 20 C.F.R § 415.929, where he testified to his lifestyle, work history and his medical history. *Id.* at 14, 27-72. But, in November, upon review, ALJ Jonathan Stanley found Mr. Stewart to not be disabled as defined by the Social Security Act. *Id.* at 8-23. In May 2021, the Appeals Council denied Mr. Stewart's request for review, which rendered the denial of benefits final. *Id.* at 1-3. Now, Mr. Stewart requests federal review of the second denial of his request for disability insurance benefits.

      To evaluate a claim of disability under Title II, an ALJ conducts a five-step analysis. First, if a claimant is doing substantial gainful activity, he is not disabled. *See* 20 C.F.R. § 416.920(a). If the individual is not engaged in substantial gainful activity, the analysis moves to the second step. Second, if a claimant does not have a severe medically determinable impairment or combination of impairments that significantly limits his physical or mental ability to do basic work activities, then he is not disabled. *See* 20 C.F.R. § 416.920(c). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. *See* 20 C.F.R. § 416.920(d); 20 C.F.R. § 416.925; 20 C.F.R. § 416.926. Before moving on to the fourth step, the ALJ must use all of the relevant evidence in the record to determine the claimant's residual functional capacity (RFC), which assess an individual's ability to perform certain physical and mental work activities on a sustained basis despite any impairment experienced by the individual. *See* 20 C.F.R. § 416.920(e); 20 C.F.R. § 416.945.

      Fourth, an ALJ considers a claimant's RFC and past relevant work, and if the claimant is still able to do his past relevant work, he is not disabled. *See* 20 C.F.R. § 416.920(f). Fifth, if an ALJ assesses a claimant's RFC in conjunction with his age, education, and work experience and finds that the claimant cannot adjust to other work available in significant

numbers in the national economy, then the claimant is disabled. *See* 20 C.F.R. § 416.920(g); 20 C.F.R. § 416.912; 20 C.F.R. § 416.960(c). Through step four of the analysis, "the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); 20 C.F.R. § 416.912(a)(1). At step five, the burden shifts to the Commissioner to identify a significant number of jobs that accommodate the claimant's profile, but the claimant retains the ultimate burden of proving his lack of residual functional capacity. *Id.*; *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008); 20 C.F.R. § 416.912(b)(3).

In this matter, at step one, ALJ Stanley determined that Mr. Stewart had not engaged in substantial gainful activity between his alleged disability onset date of May 28, 2014 and his last insured date of December 31, 2015. [Tr. at 14.] At step two, the ALJ found Mr. Stewart to have the following severe impairments: degenerative disc disease of the cervical spine, osteoarthritis of the bilateral knees, status post-right knee replacement, pancreatitis, and a history of kidney stones. *Id*. At step three, the ALJ determined that Mr. Stewart did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 16. At step four, the ALJ found Mr. Stewart to have a residual functional capacity which permits him

> to perform sedentary work as defined in 20 CFR 404.1567(a) except he is able to lift and carry twenty pounds occasionally and ten pounds frequently; can stand and/or walk two hours out of an eight-hour workday and sit six hours out of an eight-hour workday; he can occasionally push and pull using the upper and lower extremities; he can occasionally climb ramps and stairs but cannot climb ladders, ropes, or scaffolds; he can occasionally stoop, kneel, and crouch; he can never crawl; he should avoid concentrated exposure to extreme temperatures, humidity, and vibration; and he should avoid work at unprotected heights and around hazards such as moving mechanical parts.

[Tr. at 17.] Consequently, at step five, through consideration of Mr. Stewart's residual functional capacity, age, education and work experience, the ALJ determined there were significant number of jobs in the national economy that Mr. Stewart can perform. *Id.* at 22. Accordingly, the ALJ determined Mr. Stewart was not disabled as defined by the Social Security Act from May 28, 2014, through December 31, 2015[1], and was therefore ineligible for DIB. *Id.* at 23.

B

The Court's review is generally limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decision makers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

To determine whether substantial evidence exists, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957, 103 S. Ct. 2428, 77 L. Ed. 2d 1315 (1983)). A

---

[1] Because Mr. Stewart seeks disability insurance benefits, the relevant time period analyzed by the ALJ fell between May 28, 2014 and December 31, 2015. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.131(a). 404.320(b)(2) (indicating that a claimant must establish disability beginning on or before his date late insured to receive disability insurance benefits).

4

reviewing court, however, may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

## II

### A

Mr. Stewart first argues that the ALJ did not properly weigh the medical opinion of Dr. Maria Rivero. [R. 1 at 5.] Dr. Rivero indicated in her report that Mr. Stewart had irritable bowel syndrome, chronic pancreatitis, and hepatic steatosis. [Tr. at 814-17.] Dr. Rivero stated that these issues were etiologically related to Mr. Stewart's military service and that he should be given cost free healthcare for his hepatic steatosis per The Camp Lejune Families Act of 2012. *Id.*

In opposition, the Commissioner argues that the ALJ sufficiently considered Dr. Rivero's statements. [R. 17 at 14.] First, the Commissioner explains that the ALJ found the statements made by Dr. Rivero unpersuasive because "Dr. Rivero's opinion is based upon the standards used by the Department of Veterans Affairs in determining disability, which are completely different that those used by the Social Security Administration and by which the undersigned is not bound. (20 CFR 404.1504)." [Tr. at 21.] Second, the Commissioner asserts that much of the supporting evidence used in forming Dr. Rivero's opinion was unpersuasive because it was dated after the last insured date at issue in this matter. *Id.* Finally, the Commissioner argues that Dr.

5

Rivero's opinion is unpersuasive because it did not provide functional limitations for Mr. Stewart and was consequently not a "medical opinion" as defined in 20 C.F.R § 404.1513(a)(2). [R. 17 at 14; 20 C.F.R. § 404.1513(a)(2) ("A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions […].").]

The Commissioner is correct. First, it is evident that the ALJ is not bound by any other governmental agency's decision when determining whether an applicant for DIS is disabled nor required to provide analysis about another government agencies' decision. 20 CFR § 404.1504. Though the ALJ does have to consider all supporting evidence serving as the basis for the other government agency's decision, he "has done so in this instance." [Tr. at 21.] Furthermore, the Commissioner is correct that Dr. Rivero's statements are not a "medical opinion" as defined by the Social Security Administration because it lacks statements concerning Mr. Stewart's abilities. [20 C.F.R. § 404.1513(a)(2); Tr. 814-17.] And despite the insufficiency of Dr. Rivero's opinion, the ALJ still provided sufficient explanation for why Dr. Rivero's opinion was considered unpersuasive in reaching its conclusion, given the inherent flexibility an ALJ is given to "not defer or give any specific evidentiary weight [. . .] to any medical opinion." [Tr. at 21; 20 C.F.R. § 416.920c(a).] Finally, even if the Court were to believe that an analysis of facts in the record could have led to an alternative result, the ALJ's decision was based on substantial evidence and is therefore guaranteed affirmation. *See Ulman*, 693 F.3d at 714; *Bass*, 499 F.3d at 509; *Her*, 203 F.3d at 389-90.

**B**

Mr. Stewart's second contention is two-part: first, that the ALJ failed to consider his learning disability and personality disorder in reaching its conclusion and second, because he has

6

a learning disability and personality disorder, the ALJ's use of a telephonic hearing was inappropriate. [R. 13 at 2.] In support, Mr. Stewart claims to have three learning disabilities and one personality disorder and has submitted documents to the Court that he claims show his diagnosis of a learning disability and personality disorder. [R. 18.] Additionally, Mr. Stewart asserts that, because he has a learning disability, the ALJ's use of a telephonic hearing was not in his best interest. [R. 13 at 2.] In opposition, the Commissioner argues that Mr. Stewart's health care providers did not identify any learning barriers or reading limitations. [R. 17 at 7; Tr. 598, 605, 623, 644, 648, 668.] The Commissioner also points out that, regardless, the ALJ considered Mr. Stewart's mental function as prescribed by 20 CFR, Part 404, Subpart P, Appendix 1, and determined that he had no limitation in understanding, remembering, or applying information. [R. 17 at 8; Tr. at 15.]

      Regarding the ALJ's use of a telephonic hearing, the Commissioner contends that Mr. Stewart agreed on at least two occasions to a telephonic hearing and that, due to the COVID-19 pandemic, the hearing offices were closed, and it was not possible for Mr. Stewart to have an in person or videoconference hearing. [R. 17 at 7; Tr. 12-14, 345.] In further support, the Commissioner argues that COVID-19 amounts to an "extraordinary circumstance" that permits a telephonic hearing as allowed by 20 C.F.R. § 404.936(c)(2). [R. 17 at 7; 20 C.F.R. § 404.936(c)(2) ("we will schedule your or any other party to the hearing to appear by telephone when we find an appearance by video teleconferencing or in person is not possible or other extraordinary circumstances prevent you from appearing by video teleconferencing or in person.").] Finally, the Commissioner asserts that Mr. Stewart was able to participate fully in his telephonic hearing and that there is no evidence that Mr. Stewart was negatively impacted by the hearing being conducted telephonically. [R. 17 at 8.]

The Court agrees with the Commissioner. The record reflects that the ALJ did consider Mr. Stewart's mental capacity in accordance with 20 CFR, Part 404, Subpart P, Appendix 1. [Tr. at 13-17.] The ALJ's decision that Mr. Stewart's mental impairment did not cause more than minimal limitations was based on substantial evidence and therefore must stand. [Tr. at 15, 17; *Her,* 203 F.3d at 388-89.] Further, the documents submitted by Mr. Stewart to the Court are not in the record, do not provide a material basis for a remand, and Mr. Stewart has not presented good cause on why these documents were not submitted in a timely manner to the original hearing, all of which is required for the court to remand based on new evidence. *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148-49 (6th Cir.1996). Further, several courts have either used a telephonic hearing without issue or specifically held that the COVID-19 pandemic is a sufficient "extraordinary circumstance" for a hearing to be conducted telephonically. *See, e.g.*, *Fox v. Kijakazi*, 2022 U.S. Dist. LEXIS 15796 (E.D. Ky. Jan. 28, 2022); *Horne v. Kijakazi*, 2022 U.S. Dist. LEXIS 75594 (E.D. Ky. April 26, 2022); *Bowman v. Kijakazi*, 2021 U.S. Dist. LEXIS 194906 (E.D. Ky. Oct. 8, 2021). Accordingly, the hearing being conducted telephonically due to the COVID-19 pandemic was permissible under 20 C.F.R. § 404.936(c)(2) as an "extraordinary circumstance."

## C

Mr. Stewart finally asserts that the ALJ made an error in accessing his level of disability caused by his ailments. [R. 1 at 5-9.] Mr. Stewart asks the Court to reconsider, both accumulatively and individually, his bi-lateral knee replacement, kidney stones, pancreatitis, Barret's esophagus, lung nodule, Camp LeJeune liver problem, hepatic steatosis, diarrhea, gastroenteritis, IBS, Hiatal Hernia, Cameron's lesions, and herniated bulging disk of the lower back and neck. [*Id.*; R. 13 at 1.] In opposition, the Commissioner argues that Mr. Stewart's

request "amounts to an improper request for a *de novo* review of the record, which exceeds the court's role on substantial evidence review." [R. 17 at 11 (citing *Her,* 203 F.3d 388-89).] The Commissioner states that the ALJ considered "'all of the claimant's medically determinable impairments, including those that are not severe'" and argues that the ALJ considered all the evidence, gave sufficient explanation for his findings, and that findings were backed by substantial evidence. [R. 17 at 5-15; Tr. at 14-5 (citing 20 C.F.R § 404.1545(a)(2)).] Finally, the Commissioner asserts "that the mere diagnosis of an impairment is not enough to show a disability; a claimant must also prove its severity and functional impact." [R. 17 at 11 (referencing *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988)).]

The Commissioner is correct. Mr. Stewart asks for what amounts to a *de novo* review of the record. The Court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman*, 693 F.3d at 713; *see also Bradley*, 862 F.2d at 1228. The ALJ's decision was made with substantial evidence and is therefore affirmed.

### III

Upon review of this matter, the Court concludes that the ALJ did not commit reversable error. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Plaintiff Stewart's Motion to be Heard **[R. 18]** is **DENIED**;

2. The Acting Commissioner's Motion for Summary Judgment **[R. 17]** is **GRANTED**;

3. Judgment in favor of the Commissioner will be entered promptly.

This is the 22d day of June, 2022.

Gregory F. Van Tatenhove
United States District Judge